# Attachment A

# (State Court Complaint)

IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| LA'KESHA MANNING, an individual,<br><br>Plaintiff,<br><br>v.<br><br>FXI, a Pennsylvania Corporation, UBI 602 936 307<br><br>Defendant. | Case No: 21-2-10766-1 SEA<br><br>**COMPLAINT FOR DAMAGES** |

PLAINTIFF, La'Kesha Manning (hereinafter "Plaintiff"), an individual, brings this complaint against FXI (hereinafter "Defendant,") and alleges as follows:

## I. NATURE OF THE ACTION

1. Plaintiff, a Black, gay woman, was discriminated against in the terms and conditions of her employment based on her race and sexual orientation in violation of the Washington Law Against Discrimination and was paid substantially less money than her straight, Caucasian colleagues. Defendant also retaliated against Plaintiff for reporting these violations.

COMPLAINT FOR DAMAGES -1

BACKLUND LAW FIRM PLLC
1833 N. 105TH ST, #101
Seattle, Washington 98133
(206) 929-1945

## II. JURISDICTION, VENUE AND PARTIES

2. For the majority of her employment with Defendant, Plaintiff both worked and resided in King County, Washington.

3. This Court has jurisdiction over Plaintiff's claims pursuant to RCW 2.08.010.

4. Venue of this Court is proper under RCW 4.12.020 because Defendant operates in King County, Plaintiff performed work for Defendant in King County, and the cause of action arose in King County.

5. Plaintiff La'Kesha Manning is a resident of Washington State. She was an employee of Defendant. Plaintiff performed work for Defendant in King County, WA for the majority of her employment with Defendant.

6. Upon information and belief, Defendant FXI is a Pennsylvania corporation who conducts significant business and employs many people in King County, Washington. Defendant FXI employed Plaintiff within the geographic boundaries of King County and in the state of Washington.

## III. FACTUAL BACKGROUND

7. Plaintiff was hired by Defendant in August 2018 as Regional Sales Manager.

8. In February of 2019, Plaintiff was promoted to Director of International Sales for Costco and was relocated to the Retail Division of Innocor.

9. Upon information and belief, Plaintiff made substantially less than her white, straight colleagues.

10. In February of 2020, Innocor merged with FXI.

11. Upon information and belief, FXI assumed the assets and liabilities of Innocor.

COMPLAINT FOR DAMAGES -2

BACKLUND LAW FIRM PLLC
1833 N. 105TH ST, #101
Seattle, Washington 98133
(206) 929-1945

12. Plaintiff discovered through her discussions with colleagues that FXI was paying similarly situated Caucasian employees more than African-American employees.

13. Upon information and belief, FXI was paying similarly situated straight employees more than non-straight employees.

14. After the official merger, Plaintiff inquired about the differences in pay between Plaintiff and her Caucasian and/or straight co-workers in similar positions.

15. FXI told Plaintiff that FXI was aware that there were certain inconsistencies, but that they would be fixed soon.

16. In January of 2020, Plaintiff had dinner with the new Senior Vice President of Sales.

17. During this dinner, the Senior Vice President of Sales vociferously proclaimed his deep support for President Trump and stated that FXI employees should be following his lead in and out of work.

18. Plaintiff immediately replied that she did not feel comfortable discussing politics in the work setting.

19. The Senior Vice President of Sales openly scoffed at Plaintiff, ignored her request and continued his discussion.

20. In January or February of 2020, the Senior Vice President of Sales specifically stated that Marriage should be between a man and a woman.

21. Plaintiff was married to a woman at the time.

22. Members of FXI management were both aware of and participated in racially discriminatory conversations at FXI where African American employees were referred to as "others."

23. Throughout 2020, Plaintiff and the rest of the FXI management team continued receiving emails from the FXI upper management showing support for Donald Trump's re-election.

24. Plaintiff, feeling that this was inappropriate, discriminatory, and a misuse of company resources, went to her direct supervisor to report the behavior.

25. In June or July of 2020, the Senior Vice President of Human Resources reached out to Plaintiff to discuss how she was doing in the wake of the murder of George Floyd in Minnesota and the eruption of Black Lives Matter protests across the United States.

26. Plaintiff replied outlining some of her personal traumas as a black person in America and outlined a list of task/actions that FXI could take to help.

27. In a zoom meeting with the Senior Vice President of Human Resources later that month, Plaintiff stated racism is a problem at FXI and brought up the Senior Vice President of Sales' emails.

28. The Senior Vice President of Human Resources responded that she did not feel that racism was an issue at FXI, that she did not see a problem with the Senior Vice President of Sales announcing his support for a presidential candidate and further, that FXI would not be taking a stance regarding the Black Lives Matter protest and or movement.

29. In August 2020, the CEO of FXI, met with Plaintiff.

30. During the meeting, the CEO specifically stated that Black Lives Matter was not an issue of importance to FXI and that he did not feel that the company needed to make a statement because very few employees were affected by it. FXI's CEO also stated that FXI was too small for its stance to matter.

COMPLAINT FOR DAMAGES -4

BACKLUND LAW FIRM PLLC
1833 N. 105TH ST, #101
Seattle, Washington 98133
(206) 929-1945

31. Plaintiff explained to FXI's CEO that she was deeply affected by the Black Lives Matter movement and the issues addressed by the movement.

32. In September of 2020, several white, straight male colleagues that occupied substantially similarly Director positions as Plaintiff, confirmed to Plaintiff that they were making far more in compensation than Plaintiff.

33. Plaintiff again went to the Senior Vice President of Human Resources in September 2020, who acknowledged the pay gaps and stated that a more harmonious policy would be created by March 2021.

34. The Senior Vice President of Human Resources claimed that there were complications in the correction process due to the Covid-19 pandemic.

35. The Senior Vice President of Human Resources then left the company in September, 2020, without correcting any of the pay issues.

36. In October of 2020, Plaintiff reached out to the new VP of Human Resources, explaining what she had discovered about pay discrepancies.

37. The new VP of Human Resources responded that there were no pay issues and that Plaintiff's pay did not require correction.

38. In September of 2020, the Vice President of Costco Global, submitted a business request to FXI's CEO, to increase Plaintiff's compensation package.

39. The pay increase request was denied.

40. Plaintiff was then told that she would have a review and that pay would be adjusted in May 2021.

41. Plaintiff felt ignored, demeaned and devalued, as a result of her treatment at FXI and experienced severe emotional distress because of the effects of that treatment.

42. In December 2020, Plaintiff resigned from her position as Director of Costco International Sales because FXI consistently refused to pay her similarly to her straight, Caucasian co-workers.

## IV. STATEMENT OF CLAIMS

### FIRST CAUSE OF ACTION: RACIAL DISCRIMINATION – DISPARATE TREATMENT IN VIOLATION OF RCW 49.60.180

43. Plaintiff realleges and incorporates by reference each allegation contained in paragraphs 1-42 of this Complaint.

44. Defendant is an employer as defined by, and therefore subject to the Washington Law Against Discrimination 49.60.040(11).

45. Under the WLAD, it is unfair practice for any employer "to discriminate against any person in compensation or in other terms of employment because of age, sex, marital status, sexual orientation, [or] race…" RCW 49.160.180 (3).

46. In general, to establish racial discrimination on the basis of discriminatory treatment under the WLAD, "a plaintiff must show that he or she (1) belongs in a protected class, (2) was treated less favorably in the terms or conditions of his or her employment, (3) than a similarly situated employee not in a protected class, and (4) he or she and the non-protected comparator were doing substantially the same work." *Johnson v. Department of Social & Health Servs.*, 80 Wn. App. 212, 228, 907 P.2d 1223 (1996).

47. Plaintiff is part of a protected class based on her sexual orientation and her race. RCW 49.160.180.

48. Plaintiff and her straight, Caucasian colleagues were all in similar positions and engaged in substantially similar work.

49. Plaintiff was treated less favorably in the terms and conditions of her employment by consistently being paid less than her straight, Caucasian colleagues.

50. Plaintiff was treated less favorably in the terms and conditions of her employment by being subject to insensitive and inappropriate workplace emails and conversations about her race in a way that her Caucasian colleagues were not.

51. Plaintiff was treated less favorably in the terms and conditions of her employment than her straight, Caucasian colleagues because her reports of discriminatory behavior, and her requests for remedy, were consistently ignored.

52. Defendant's acts and omissions caused Plaintiff significant emotional distress.

53. Defendant's acts and omissions caused a discriminatory workplace environment in violation of WLAD, RCW 49.60 et seq.

54. Upon information and belief, Plaintiff's race was a substantial factor in Defendants' decisions about compensation, in violation of WLAD, RCW 49.60 et seq.

55. Upon information and belief, Plaintiff's sexual orientation was a substantial factor in Defendants' decisions about compensation, in violation of WLAD, RCW 49.60 et seq.

56. Plaintiff was treated less favorably in the terms and conditions of her employment than her straight, white colleagues who were performing substantially similar work.

## SECOND CAUSE OF ACTION: RACIAL DISCRIMINATION – HOSTILE WORK ENVIRONMENT

57. Plaintiff realleges and incorporates by reference each allegation contained in paragraphs 1-57 of this Complaint.

58. RCW 49.60.180 (3) prohibits an employer from discriminating against an employee in other terms or conditions of employment because of race.

59. To establish a prima facie case, Plaintiff must show that she suffered harassment (1) that was unwelcome, (2) because she was a member of a protected class, (3) that affected the terms and conditions of her employment, and (4) that was imputable to the employer. *Antonius v. King County*, 153 Wn.2d 256, 261, 103 P.3d 729 (2004) (citing *Glasgow v. Ga.-Pac. Corp.*, 103 Wn.2d 401, 406-07, 693 P.2d 708 (1985)); see also *Clarke v. Office of*

*Attorney Gen.*, 133 Wn. App. 767, 785, 138 P.3d 144 (2006), *review denied*, 160 Wn.2d 1006 (2007).

60. Conduct is unwelcome if the plaintiff did not solicit or incite it. *Glasgow*, 103 Wn.2d at 406.

61. Discriminatory or derogatory comments, mockery, or insults towards the employee generally constitutes harassment. *Loeffelholz v. Univ. of Wash.*, 175 Wn.2d 275, 285 P.3d 854, 859 (Wash. 2012); *Antonius v. King County*, 153 Wn. 2d 256 at 259 (Wash. 2004); *Alonso v. Qwest Commc'ns Co., LLC*, 178 Wn. App. 734 at 740, 315 P.3d 610; *Davis v. Fred's Appliance, Inc.*, 171 Wn. App. 348, 362, 287 P.3d 51 (2012); *Davis v. W. One Auto. Grp.*, 140 Wn. App. 449, 453, 457, 166 P.3d 807 (2007).

62. Harassment may be imputed if a manager participated in the harassment. *Davis v. Fred's Appliance, Inc.*, 171 Wn. App. 348, 362, 287 P.3d 51 (2012).

63. Employees with authority to affect employee hours, wages, and working conditions qualify as managers. *Alonso v. Qwest Commc'ns Co., LLC*, 178 Wn. App. 734, 752, 315 P.3d 610 (2013).

64. A wrongful termination action may be based on "either express or constructive" discharge. *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wn.2d 233, 238, 35 P.3d 1158 (2001). To establish constructive discharge, an employee must show that an employer engaged in a deliberate act, or a pattern of conduct, that made working conditions so intolerable that a reasonable person would have felt compelled to resign. *Sneed v. Barna*, 80 Wn. App. 843, 849-50, 912 P.2d 1035, *review denied*, 129 Wn.2d 1023 (1996).

65. Plaintiff was denied her right to equal pay for equal work as compared to her straight, Caucasian colleagues.

66. Plaintiff was also forced to endure a racially toxic environment on a daily basis.

COMPLAINT FOR DAMAGES -8

BACKLUND LAW FIRM PLLC
1833 N. 105TH ST, #101
Seattle, Washington 98133
(206) 929-1945

67. Individual members of FXI management were both aware of and participated in racially discriminatory conversations where African American employees were referred to as "others."

68. Plaintiff was personally told by the CEO that the BLM protests did not affect FXI or its employees, and therefore did not warrant being addressed.

69. The Senior Vice President of Sales, and other members of management felt comfortable enough at FXI to publicly share his support for President Trump (and his controversial racial beliefs) in company emails even though Plaintiff openly objected to the emails.

70. Plaintiff made known multiple times that the employer's and colleagues' conduct was unwelcome. Plaintiff never solicited or incited it any of the aforementioned racially discriminatory behavior.

71. Plaintiff was asked by management how the George Floyd murder and the Black Lives Matter protests were affecting her and when she was honest and wrote an email detailing the steps FXI could take to help with the racism she experienced at the company, the manager merely stated that there were no race issues at FXI.

72. Plaintiff developed depression, anxiety, insomnia and suffered severe emotional distress as a result of the racially hostile work environment Plaintiff was forced to endure.

### THIRD CAUSE OF ACTION: RETALIATION

73. Plaintiff realleges and incorporates by reference each allegation contained in paragraphs 1-72 of this Complaint.

74. To establish a prima facie case of retaliation, a plaintiff must prove: (1) they engaged in statutorily protected activity; (2) the employer took an adverse employment action; and (3) a causal link existed between the activity and the adverse action. *Francom v. Costco*

*Wholesale Corp.*, 98 Wn. App. 845, 861-62, 991 P.2d 1182, review denied, 141 Wn.2d 1017 (2000).

75. Adverse employment actions involve a change in employment that is more than an inconvenience or alteration of one's job responsibilities. *Boyd v. State*, 187 Wn. App. 1, 349 P.3d 864 (2015).

76. Adverse employment actions may include the following: failure to promote, *Davis v. Department of Labor and Industries*, 94 Wn.2d 119, 615 P.2d 1279 (1980), reduction of pay, *Kirby v. City of Tacoma*, 124 Wn. App. 454, 98 P.3d 827 (2004), demotion or transfer, *Robel v. Roundup Corp.*, 148 Wn.2d 35, 59 P.3d 611 (2002), or a hostile work environment. Id

77. When Plaintiff first became aware of the pay discrepancies between Caucasian and African-American employees, she immediately went to members of FXI upper management to alert them of the issues.

78. Plaintiff also reported several instances of her colleagues using inappropriate and derogatory language in reference to African-Americans, including her direct supervisor, the VP of Costco Global.

79. Plaintiff specifically reported her discomfort and concerns with the propriety of members of management's statements and their use of FXI's email platform to voice their support for Donald Trump and his controversial racial beliefs.

80. Plaintiff specifically reported Mr. Roe's comments regarding non-straight relationships.

81. Despite these multiple attempts to alert the highest levels of management to the unlawful and discriminatory practices ongoing at FXI, no steps were taken to raise Plaintiff's

COMPLAINT FOR DAMAGES -10

BACKLUND LAW FIRM PLLC
1833 N. 105TH ST, #101
Seattle, Washington 98133
(206) 929-1945

pay to equate with her Caucasian colleagues, nor to stop the inappropriate and unprofessional racially demeaning comments that were being made.

82. FXI actively took steps to convince Plaintiff that FXI did not have problems regarding racial equity that needed to be addressed.

83. Plaintiff was forced to resign due to this hostile work environment.

## FOURTH CAUSE OF ACTION: CONSTRUCTIVE DISCHARGE AS VIOLATION OF PUBLIC POLICY

84. Plaintiff realleges and incorporates by reference each allegation contained in paragraphs 1-83 of this Complaint.

85. The tort of wrongful discharge in violation of public policy requires that plaintiff prove four elements: (1) the existence of a clear public policy (the clarity element), (2) that discouraging the conduct in which defendant engaged would jeopardize the public policy (the jeopardy element), (3) the public policy linked conduct caused plaintiff's dismissal (the causation element), and (4) that defendant did not establish an overriding justification for plaintiff's dismissal. *Wahl v. Dash Point Family Dental Clinic, Inc.*, 144 Wn. App. 34, 41-42, 181 P.3d 864, 868 (2008).

86. Washington State law prohibits employers' discrimination against employees on the basis of race, indicating a strong public policy in preventing racial discrimination. RCW 49.60.180 (Washington State Law Against Discrimination ("WLAD")).

87. Plaintiff reported, to FXI management, a violation of WLAD by pointing to disparity in pay in salaries between African American employees and Caucasian employees in substantially similar positions.

88. Plaintiff also reported, to FXI management, forms of institutional racism in FXI's lack of reaction to the Black Lives Matter protests that were deeply affecting Ms. Manning and other African-American employees.

89. Plaintiff also reported, to FXI management, negative comments regarding non-straight relationships.

90. Plaintiff also reported, to FXI management, the use of company email to promote the reelection of Donald Trump.

91. As a result of FXI's failure to address the inappropriate and unlawful behavior of its employees and supervisors, as well as its inequitable pay policies, Ms. Manning was forced to resign her employment.

92. By treating Ms. Manning in this manner for reporting these violations, FXI has certainly discouraged other employees from reporting violations.

93. FXI has no overriding justification for creating this hostile work environment or for consistently paying Plaintiff less than her straight, Caucasian co-workers.

## PRAYER FOR RELIEF

94. Plaintiff realleges and hereby incorporates by reference each allegation contained in paragraphs 1-93 of this Complaint and respectfully requests this Court grant Plaintiff relief and enter judgment against Defendant as follows.

WHEREFORE, Plaintiff prays for relief as follows:

A. Judgment against the Defendants for general and special damages and all other actual damages in an amount to be determined at trial;

COMPLAINT FOR DAMAGES -12

BACKLUND LAW FIRM PLLC
1833 N. 105TH ST, #101
Seattle, Washington 98133
(206) 929-1945

B. Damages for lost past and future wages and benefits in amounts to be determined at trial;

C. Damages in the form of lost earning capacity and lost wages from Plaintiff's subsequent employer;

D. Damages for inflicting substantial emotional distress, humiliation, pain and suffering, anxiety, and stress upon Plaintiff in an amount to be determined at trial;

E. Attorney's fees and costs, as allowed by law;

F. Pre-judgment and post-judgment interest, as allowed by law;

G. Monetary relief for any adverse tax consequences of Plaintiff's award; and

H. Such other and further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED AND DATED this 13th day of August, 2021.

ANDREW J. BACKLUND, WSBA #45775
Email: andy@backlundlawfirm.com
1833 N. 105th Street, Suite 101
Seattle, Washington 98133-8973
Telephone: (206) 745-2839

*Attorney for Plaintiff*